[Crim. No. 6032. Third Dist. Feb. 17, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JAY DERANTE LOGGINS, Defendant and Appellant.

## COUNSEL

Joan Poulos, under appointment by the Court of Appeal, and John W. Poulos for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Jack R. Winkler and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, J.**—The principal issue on this appeal is the propriety of the published pattern instruction known as CALJIC No. 5.15, which tells the jury in a murder trial that to establish the defense of justifiable homicide, "the burden is on the defendant to raise a reasonable doubt as to his guilt of the charge of murder."[1]

In this case defendant did not deny shooting the victim but sought to establish justifiable homicide by self-defense and, as a secondary alternative, to establish mitigation reducing the killing to manslaughter. The jury returned a manslaughter verdict.

The three principals in the events were defendant Loggins, his friend James Freeland, and Larry Hartman, the decedent. All were part of the

---

[1] The instruction in question is published in California Jury Instructions, Criminal (3d rev. ed. 1970). As published the instruction reads: "Upon a trial of a charge of murder, it is a defense that the homicide was [justifiable] [excusable]. To establish this defense the burden is on the defendant to raise a reasonable doubt as to his guilt of the charge of murder."

In this case the trial judge included the word "justifiable" but deleted "excusable."

Sacramento County drug scene. On the morning of the offense the three were in Loggins' home. Loggins was in the bedroom with Freeland, helping the latter "shoot" seconal. Hartman was in the adjoining living room. Whether by accident or design, Hartman fired a bullet from his pistol. The bullet entered the bedroom. Loggins ran from the room and remonstrated with Hartman, who said that he had been pointing the gun at the floor, that it had gone off accidentally and the bullet had ricocheted. (The bullet had passed through the living room wall 4 feet above floor level and at a slight upward angle.) Freeland then entered the living room. The shot had wounded him in the shoulder.

The trio entered Freeland's car and drove to a hospital. Both defendant and Hartman wore pistols in their belts. Freeland got out at the hospital and asked them to fetch his girl friend Margie. Loggins and Hartman left, the latter driving. Approximately 10 minutes later inhabitants on a street four miles from the hospital saw a car come to a sudden stop and a body pushed from the car, which then left the scene. The body was Hartman's. It bore three bullet wounds, one in the right arm, the second in the neck, and the third in the head. All the shots had been fired from defendant's pistol.

Defendant sought to obliterate clues connecting him with the killing. Nevertheless, he told Dane Ingalls that he had shot Hartman; that Hartman had been trying to kill either Freeland or himself. Ingalls testified that defendant told him he had "got" the guy who killed his mother; that as they drove, he had said, "You missed, didn't you?"; that Hartman had grinned and at that point defendant shot him. Ingalls testified he did not recall defendant saying that he had shot in self-defense after Hartman pulled a gun.

Defendant took the stand. He testified he had examined his living room and found no sign of a ricocheted bullet; that as they drove along after leaving Freeland at the hospital he was in fear of Hartman. He remarked to Hartman, "You missed me, didn't you?" According to defendant, Hartman then slammed on the brakes, pulled out a gun and said, "Your mother went." He and Hartman then scuffled and he pulled his own gun and shot Hartman. Defendant's mother had been murdered in 1967 and the killer had never been discovered. According to appellant, Hartman's remark meant that the latter had killed his mother. He said that after the shooting he had thrown Hartman's gun into a trash can at a car wash. He admitted that he knew of no reason why Hartman would try to shoot either Freeland or himself.

In a criminal case, of course, the defendant is presumed to be innocent

and the prosecution has the burden of proving his guilt beyond a reasonable doubt. (Pen. Code, § 1096.) ■ Error occurs if a trial court tells a jury that any burden of persuasion rests on the defense as to the general issue of guilt. (*People* v. *Letourneau* (1949) 34 Cal.2d 478, 490-491 [211 P.2d 865].) Defendant argues that when justification (here, self-defense) is an issue in a homicide trial, CALJIC No. 5.15 erroneously places the burden of proving innocence on the defense.

■ The challenged instruction has its conceptual root in Penal Code, section 1105, which declares: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Although section 1105 literally mentions the defendant's "burden of proving" mitigation or justification, a number of decisions reveal a more limited objective. It is evoked only when the defendant is charged with murder, a crime which includes malice aforethought as an essential element. Malice may be inferred—according to authoritative decisions, even presumed—from the circumstances. (*People* v. *Williams* (1969) 71 Cal.2d 614, 623-624 [79 Cal.Rptr. 65, 456 P.2d 633]; *People* v. *Conley* (1966) 64 Cal.2d 310, 320 [49 Cal.Rptr. 815, 411 P.2d 911].) Thus, in a murder trial, when the prosecution evidence reasonably permits the inference that the defendant killed the decedent without justification and without mitigating circumstances, no further proof of malice is necessary to sustain a second degree murder verdict. (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374].) At that point, section 1105 supplies a rule of procedure for the conduct of trial: If the defense is mitigation—that is, reduction to manslaughter—or justification—for example, self-defense—the defendant should then come forward with enough evidence to raise a reasonable doubt of guilt in the mind of the fact trier. (*Jackson* v. *Superior Court, supra,* 62 Cal.2d at p. 526; *People* v. *Deloney* (1953) 41 Cal.2d 832, 840-842 [264 P.2d 532]; *People* v. *Cornett* (1948) 33 Cal.2d 33, 42-43 [198 P.2d 877]; see also *People* v. *Montalvo* (1971) 4 Cal.3d 328, 333, fn. 3 [93 Cal. Rptr. 581, 482 P.2d 205].)

According to the cited cases, section 1105 does not shift a burden of persuasion to the defendant, but only beckons him to come forward with his evidence. This decisional limitation upon the role of section 1105 is confirmed by a declaration in section 501 of the Evidence Code: "Insofar as any statute, except Section 522 [of the Evidence Code relating to the

insanity defense] assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096 [declaring the prosecution's burden of proving guilt beyond a reasonable doubt]." In its comment accompanying Evidence Code section 501, the California Law Revision Commission accurately pointed out that statutory allocations of proof in criminal cases do not affect the prosecution's burden of proving guilt beyond a reasonable doubt and "do not (except on the issue of insanity) require the defendant to persuade the trier of fact of his innocence."

Section 1105 does not shift any burden of persuasion to the defendant. (*Jackson* v. *Superior Court, supra,* 62 Cal.2d at p. 526; *People* v. *Deloney, supra,* 41 Cal.2d at p. 841.) It has a multiple but nonetheless restricted role. First, it frees the prosecution from the risk of a directed acquittal. (See *People* v. *Albertson* (1944) 23 Cal.2d 550, 587 [145 P.2d 7], concurring opinion.) Second, it expresses a rule of policy and convenience which allocates a trial function to the defendant because, as a participant in the affray, he has better access to the evidence than the prosecution. (See Evid. Code, § 603; *People* v. *Montalvo, supra,* 4 Cal.3d at p. 334; 1 Witkin, Cal. Crimes (1963) §§ 342-343; Witkin, Cal. Evidence (2d ed. 1966) §§ 202, 203.) Third, it warns the defendant that inferred malice may produce a murder verdict unless he musters his own evidence of mitigation or justification.

The question is not whether CALJIC No. 5.15 accurately communicates a relatively refined legal concept to lay jurors; not whether its draftsmanship distorts the underlying concept to the defendant's detriment, but whether it has any place in jury instructions at all. A number of decisions express dislike and distrust of an instruction expressing the concept. *People* v. *Deloney, supra,* holds that an instruction "in the language" of section 1105 has no place in jury instructions "even with an adequate explanation of its meaning . .. . ." (41 Cal.2d at p. 842.) One opinion writer declares: "Judicial interpretation has attributed to [section 1105] a meaning not apparent from its language, and an instruction that fails to convey that interpretation is misleading and therefore erroneous." (*People* v. *Albertson, supra,* 23 Cal.2d at p. 588, concurring opinion.) Other cases express similar distrust. (*People* v. *Letourneau, supra,* 34 Cal.2d at pp. 490-491; *People* v. *Cornett, supra,* 33 Cal.2d at p. 44; *People* v. *Thomas* (1945) 25 Cal.2d 880, 896 [156 P.2d 7].)

None of these decisions completely embargoes the instruction. All leave room for the impression that the underlying concept may be incorporated somehow, somewhere, in the jury charge if (but only if) the trial judge can find an intelligible and nonprejudicial way of stating it.

Cloaked in whatever verbalisms, section 1105 should be excluded from

jury instructions. Beyond the apparent fact that it generates more difficulty than value, it is none of the jury's affair and plays no legitimate role in their deliberations.[2] By the time the court instructs the jury, section 1105 has fulfilled its role in the trial. Having disappeared from the scene, it plays no part in the jury deliberations. Its disappearance becomes manifest through an examination of the trial's preceding stages:

Section 1105 limits itself to murder trials. Its office, as we have observed, is to permit prosecution reliance on the inference or presumption of malice arising when death results from an apparently deliberate, deadly act and to warn the defendant to come forward with negating evidence. At the point when the People rest their case, the prosecution's proof may have embodied some evidence of mitigation or justification. In that state of the evidence section 1105 remains inanimate by force of its own terms. In that state of the evidence the defense may seek to amplify and buttress the showing of mitigation or justification, but it does so for its own advantage and not by reason of a statutory "burden." Only when the People's case embodies no evidence of mitigation or justification is section 1105 activated; at that point it warns the defendant that the task or responsibility of producing such evidence has now shifted to him.

The next appraisal occurs when the defense rests. At that stage the defendant may have produced some evidence of mitigation or justification. If he has, section 1105 has then fulfilled its role. Even if the inference of malice is raised to the level of a presumption, the presumption is not one affecting the burden of proof, but one affecting the burden of producing evidence. (Evid. Code, §§ 601-607.) When the latter kind of burden is fulfilled, the presumption disappears, and the jury must then determine the question of malice without regard to it. (Evid. Code, § 604; see *People* v. *Hemmer* (1971) 19 Cal.App.3d 1052, 1061 [97 Cal.Rptr. 516]; CALJIC (3d ed.) Appendix B, p. 587; McDonough, *The California Evidence Code: A Precis* (1966) 18 Hastings L.J. 89, 100.) Because section 1105 has fulfilled its office when the defense produces evidence of mitigation or justification, an instruction injecting its concept into the jury's deliberations serves no purpose.

In summary, if the prosecution alone or if both parties produce some evidence of mitigation or justification, section 1105 remains quiescent

---

[2]At one time this court considered a decisional emanation from section 1105 and observed that it was "not designed for guidance of the jury." (*People* v. *Chapman* (1968) 261 Cal.App.2d 149, 177 [67 Cal.Rptr. 601].) Although the authors of CALJIC No. 5.15 have cited *Jackson* v. *Superior Court, supra,* as authority, it is doubtful if the writer of the *Jackson* opinion intended his discussion for incorporation in a jury instruction.

and should be excluded from the jury charge; if the defendant alone produces such evidence, the statute is fulfilled and its concept should not be injected into the deliberations; if neither side shows mitigation or justification (for example, if the issue is alibi or identity), the entire problem of mitigation or justification is alien to the case and should be excluded for that reason alone. Whichever side produces evidence of mitigation or justification, the standard instruction on proof of guilt beyond a reasonable doubt supplies a sufficient criterion for the jury's guidance. At that point the alternatives are exhausted. In none of them is the underlying concept of section 1105 helpful or even relevant to the jury's deliberations.

Instructions must be pertinent to the issues before the jury. (Pen. Code, § 1093, subd. 6, § 1127.) The concept underlying section 1105 is not pertinent to the jury's deliberations. Consequently, inclusion of CALJIC No. 5.15 in jury instructions is error.

 Contrary to defendant's claim, we find the error harmless. Defendant takes as his premise *Re Winship* (1970) 397 U.S. 358, 363-364 [25 L.Ed.2d 368, 374-375, 90 S.Ct. 1068], which established the proposition that proof of guilt beyond a reasonable doubt is an ingredient of due process in criminal trials. He then draws the corollary that the error is one of "constitutional dimensions." He fails to establish a vital intermediate step in the deduction; he fails to establish that the erroneous instruction actually shifted to the defense some part of the prosecution's burden of persuasion.

Quite aside from constitutional insights emanating from *Re Winship,* *supra,* California law has long barred instructions placing upon the defense any burden of persuasion as to the elements of the crime, e.g., *People* v. *Letourneau, supra,* 34 Cal.2d at pages 490-491. Evidence of a defense other than insanity is sufficient if it raises no more than a reasonable doubt of guilt. (*People* v. *Flannelly* (1900) 128 Cal. 83 [60 P. 670] (self-defense); *People* v. *Riccardi* (1920) 50 Cal.App. 427 [195 P. 448] (self-defense); *People* v. *Dowell* (1928) 204 Cal. 109 [266 P. 807] (alibi).) A defendant has a right to an instruction directing the jury's attention to evidence which might raise a reasonable doubt as to his guilt. (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].)

Relative to the claim of self-defense the challenged instruction saddled the defense with no burden of persuasion. Prosecution evidence that defendant had fired three shots into his victim's body at short range created an inference or presumption of malice. The challenged instruction declared that self-defense need appear only to the point of raising a reasonable doubt of guilt—a legally accurate declaration. The inaccuracy,

the possibility of harm, stemmed from that part of the instruction placing on the defense the burden of raising the reasonable doubt when, in truth, the doubt could emanate from the evidence of both sides. The jurors, nevertheless, had been instructed that the prosecution had the burden of proving guilt beyond a reasonable doubt; that if convinced beyond a reasonable doubt of an unlawful killing, they must give the defendant the benefit of reasonable doubt in fixing the degree of homicide. Viewed in context, the challenged instruction did not distract the jurors from measuring all the evidence of self-defense by the yardstick of reasonable doubt. The fact that they brought in a manslaughter rather than murder verdict points to their thorough adherence to that standard. In the light of the entire record, we find neither a reasonable possibility (*Chapman* v. *California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]) nor a reasonable probability (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243]) that the challenged instruction contributed to the return of a manslaughter rather than acquittal verdict.

Defendant charges that the trial court improperly sustained a prosecution challenge to one prospective juror who had declared conscientious scruples against the death penalty. In *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], the Supreme Court held that the exclusion of jurors with bias against the death penalty results in a death-oriented jury unable to weigh objectively the choice between life and death; thus that a death penalty at the hands of such a jury cannot stand.

Where, as here, a single venireman was erroneously excluded from a jury which ultimately returned a manslaughter verdict, the claim of reversible *Witherspoon* error is inconsequential. (See *Witherspoon* v. *Illinois, supra,* 391 U.S. at p. 522, fn. 21 [20 L.Ed.2d at p. 785]; *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 545 [20 L.Ed.2d 797, 800, 88 S.Ct. 1788]; *People* v. *Helfend* (1969) 1 Cal.App.3d 873, 883 [82 Cal.Rptr. 295]; *People* v. *Schindler* (1969) 273 Cal.App.2d 624, 643 [78 Cal.Rptr. 633].)

Judgment affirmed.

Richardson, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 6, 1972, and appellant's petition for a hearing by the Supreme Court was denied April 12, 1972. Peters, J., was of the opinion that the petition should be granted.