[Crim. No. 21383. First Dist., Div. Four. Jan. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLPH MOSES PINEIRO, Defendant and Appellant.

## COUNSEL

Matthew N. White, under appointment by the Court of Appeal, and Robinson & Peavey for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RATTIGAN, Acting P. J.**—Appellant Rudolph Pineiro was charged by information with murder. A jury found him guilty of the lesser included offense of involuntary manslaughter. He was placed on probation for three years on condition (among others) that he serve one year in the county jail. He appeals from the order granting probation.

### PROCEDURAL SEQUENCE

The information against appellant was filed on December 14, 1979. He was charged in a single count with having murdered Larry Glenn on November 8, 1979, in violation of Penal Code section 187. It was also

alleged in the information that during the commission of the offense appellant had personally used "a deadly and dangerous weapon, to wit, a knife," within the meaning of Penal Code section 12022, subdivision (b).

At his arraignment on December 21, 1979, appellant entered a plea of not guilty and denied the enhancement allegation. His jury trial commenced on February 4, 1980. In a verdict returned four days later, the jury found him guilty of involuntary manslaughter as "a lesser and included offense of the offense charged in the Information." The jury also found that the enhancement allegation in the information was true.

On May 21, 1980, the trial court sentenced appellant to state prison for the middle term of three years; suspended execution of the sentence; and made an order placing him on probation for three years on condition (among others) that he serve one year in the county jail. He filed a timely notice of appeal from the order on May 22, 1980.

THE EVIDENCE

The trial record supports the recitals separately captioned below.

*The Prosecution's Case in Chief*

San Francisco Police Officer George S. Stasko testified that on the night of November 8, 1979, he and his partner were dispatched to a hospital to interview Elizabeth Wingate, a rape victim. Appellant is her husband. The officers talked to him at the hospital while Wingate was being treated. They told him that they had identified a man named "Stick Pin" as the possible suspect and that an arrest was to be made soon.

Appellant told the officers that he knew "Stick Pin," and that he was going "out on the street" to look for him. The officers warned him not to take matters in his own hands. He began to calm down, but he "started escalating again" when he "got together" with Wingate. The officers subsequently drove the couple home.

Officer Mark E. Laherty testified that he and Officer Deely were dispatched to the Cambridge Hotel on November 8, 1979 to investigate a call about a "citizen holding a suspect." They saw appellant, Wingate, and Glenn (Stick Pin) in front of the hotel. Officer Deely told Glenn

that he was under arrest. Officer Laherty then saw appellant stab Glenn three times with a knife. Glenn "started to bleed, ... and went down."

Officer Deely handcuffed appellant, and Officer Laherty called an ambulance. The officers recovered a knife which appellant had thrown away. Officer Laherty did not see anything in Glenn's hands, nor did he see Glenn hit appellant.

Officer James Deely substantially corroborated Officer Laherty's testimony. He (Officer Deely) had retrieved appellant's knife, which was received in evidence.

Dr. Boyd G. Stephens, the San Francisco Coroner, testified that he had assisted in the performance of an autopsy on the body of Larry Glenn. The cause of Glenn's death was a stab wound in his neck.

### The Defense

Appellant testified as follows: His wife had told him at the hospital that Glenn and another man had raped her and told her that they would kill appellant. Appellant and Wingate went to the Cambridge Hotel after the officers had driven them home. Appellant was carrying a knife, and he expected that there might be "trouble."

Appellant determined that Glenn was in the hotel, telephoned the police, and reported that he was "holding ... a rape suspect" and "making a citizen's arrest." He entered the hotel and saw Glenn, who was holding a bottle of Thunderbird wine in his hand. In appellant's presence, Glenn asked Wingate "'[A]re you the woman ... going around saying I'm supposed to have done something to you.'" Appellant asked Wingate "Is this the man who raped you.'" She answered "'Yes.'"

As police officers arrived, Glenn made a "threatening move" as if "[h]e was reaching for a weapon." Appellant drew his knife and "lunged" at Glenn. He was not "trying to kill" Glenn, but was "trying to wing him" and "render him helpless." Glenn "bobbed," and the knife went into his throat. When appellant was arrested by officers later, he told them that he "did not mean to kill" Glenn.

Appellant admitted on cross-examination that Glenn did not strike

him or make any threats. He testified that Glenn was holding the wine bottle "as though he were holding a club," but that "he never struck with the bottle."

Appellant's wife substantially corroborated his version of the altercation. After the police officers came, she asked him "'Why did you do it.'" He said "'I don't know why .... Reaction.'" She saw a bottle on the sidewalk after the stabbing.

## The Prosecution's Case in Rebuttal

San Francisco Police Inspector Frank Falzon testified in rebuttal that he had interviewed appellant after the latter had been arrested. Appellant told him that he (appellant) was not sure what Glenn was going to do with the bottle. Inspector Falzon instructed crime lab personnel to look for a Thunderbird wine bottle at the scene of the stabbing. No evidence of any such bottle was brought to his attention.

## REVIEW

### Claimed Instruction Error

■ When the issue of self-defense is properly presented in a homicide case, the prosecution must prove the absence of the justification beyond a reasonable doubt. (*People v. Banks* (1976) 67 Cal.App.3d 379, 384 [137 Cal.Rptr. 652].) The trial court instructed the jury on the issue of self-defense by giving CALJIC Nos. 5.15 (1977 rev.) and 5.12 (1979 rev.) as follows:

"[CALJIC No. 5.15 (1977 rev.):] Upon a trial ... of a charge of murder, it is a defense that the homicide was justifiable. [¶] The burden is on the prosecution to prove, beyond a reasonable doubt, that the homicide was not justifiable.

"[CALJIC No. 5.12 (1979 rev.):] The killing of another person in self-defense is justifiable and not unlawful when the person, who does the killing, has reasonable ground to believe, and does believe, that there is eminent [*sic*] danger that the other person will kill him or cause him great bodily injury, and a reasonable person, under the same circumstances, would believe that it was necessary to kill the other person to prevent death or great bodily injury to himself.

"In order to justify the killing of another person in self-defense, actual danger or great bodily injury is not necessary. [¶] On the other hand, a fear of death or great bodily harm is not sufficient to justify killing another in self-defense.

"In order to justify a killing in self-defense, it. must be established, one, the circumstances must be sufficient to excite the fears of a reasonable person that there was eminent [*sic*] danger of death or great bodily injury, and, two, the party killing must have acted under the influence of such fears alone, and under the belief that such killing was necessary to save himself from death or great bodily injury."

■ Appellant claims prejudicial error on the ground that the use in CALJIC No. 5.12 of the phrases "In order to justify the killing of another person in self-defense . . .," and "In order to justify a killing in self-defense, it must be established . . .," operated (1) to relieve the prosecution of the necessity of proving beyond a reasonable doubt that appellant had *not* been justified in killing Glenn in self-defense and (2) to require appellant to establish that he *had* been justified in killing Glenn. He thus claims in effect that language in CALJIC No. 5.12 effectively cancelled CALJIC No. 5.15.

We disagree. The two instructions are not "conflicting and confusing," as appellant contends, because each deals with a separate concept: CALJIC No. 5.12 defines the elements of self-defense, and CALJIC No. 5.15 instructs that the prosecution has the burden of proving beyond a reasonable doubt that the elements are *not* present. Viewed in these lights, the two instructions could not confuse or conflict because they do not address the same subject.

The error claimed would not command reversal in any event. In *People* v. *Loggins* (1972) 23 Cal.App.3d 597 [100 Cal.Rptr. 528], the jury was given an earlier version of CALJIC No. 5.15 which instructed that to establish the defense of justifiable homicide "the burden is on the defendant to raise a reasonable doubt as to his guilt of the charge of murder." (*Id.*, at p. 599 and fn. 1.) The Court of Appeal held that the instruction was erroneous, but that reversal was not required because "the challenged instruction saddled the defense with no burden of persuasion" on the issue of self-defense. (*Id.*, at p. 604.)

There was evidence in *Loggins* that the defendant had shot the victim three times at close range. (23 Cal.App.3d at p. 604.) In the present

case, the prosecution presented evidence that appellant stabbed Glenn three times. Evidence of this type may create an inference of malice. (See 1 Witkin, Cal. Crimes (1978 supp.) Crimes Against the Person, § 320, pp. 309-311.) The jurors were instructed that the prosecution had the burden of proving appellant's guilt beyond a reasonable doubt, and that if they were convinced beyond a reasonable doubt that the killing was unlawful appellant should be given the benefit of reasonable doubt in fixing the degree of homicide. The following language paraphrased from the *Loggins* decision may be applied: "Viewed in context, the challenged instruction did not distract the jurors from measuring all the evidence of self-defense by the yardstick of reasonable doubt. The fact that they brought in a manslaughter rather than murder verdict points to their adherence to that standard. In the light of the entire record, ... [there is] ... neither a reasonable possibility (*Chapman* v. *California* (1967) 386 U.S. 18, 23) nor a reasonable probability (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837) that the challenged instruction contributed to the return of a manslaughter rather than acquittal verdict." (*People* v. *Loggins, supra*, 23 Cal.App.3d 597 at p. 605 [parallel citations omitted].)

### Claimed Misconduct by the Prosecutor

Appellant contends that "[t]he prosecutor's misstatements of law and fact regarding appellant's self-defense claim compounded the jury's confusion, mandating a reversal." Apart from the question whether the jury was confused in fact (see the discussion above), this contention is in effect a claim of misconduct by the prosecutor.

The prosecutor made the following comments during his closing argument to the jury:

"I don't think self-defense really is that much of an issue, because the defendant took the stand himself and he admitted that he didn't give Mr. Glenn any warning whatsoever before he killed him. [¶] He didn't tell him to back off, to stop, hold it—he just took out a knife and stabbed him.

"... There's a thousand things he could have done. The police are there. He could have stepped back. He[] could have just gone to one side."

Appellant contends that these statements were "erroneous and misleading" because California does not condition the defense of self-defense upon a duty to warn or a duty to retreat. This is true. (See 1 Witkin, Cal. Crimes (1963) Defenses, §§ 158-163, pp. 151-156.) ■ "However, a prosecutor is not guilty of misconduct because in his argument of the law to the jury, he is wrong as to the law." (*People v. Meneley* (1972) 29 Cal.App.3d 41, 61 [105 Cal.Rptr. 432].) ■ The jury was repeatedly informed, by the court and both counsel, that instructions on the law would be given by the court alone. If the quoted remarks did amount to misconduct, they were waived because no timely objection was made. (*People v. Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) If the issue had been reserved by objection, appellant's contention would fail because a timely objection and admonishment would very likely have cured the harm. (*Id.*, at p. 34.)

■ Referring to the evidence of statements appellant had made after he stabbed Glenn, the prosecutor also commented as follows: "... [A]nother thing that[] struck me in particular, here's a man on the street, in front of two police officers and his wife, and she says, 'Why did you do it?' And he says, 'I don't know.'"

Appellant's wife testified that after he had told her he did not know why he had done "it," he said "'Reaction.'" He now contends that the prosecutor's omission of this fact "distorted" and "misstated fact."

There was an omission as claimed, but it did not constitute misconduct. Defense counsel had already mentioned appellant's complete statement in her argument to the jury, urging that it demonstrated that he had not intended to kill Glenn. The prosecutor appears to have been arguing that appellant's statements were unusual in their context. ■ It is not misconduct for a prosecutor to argue different inferences from the evidence. (*People v. Green, supra*, 27 Cal.3d 1 at p. 35; *People v. Beivelman* (1968) 70 Cal.2d 60, 76-77 [73 Cal.Rptr. 521, 447 P.2d 913], cert. den. *sub nom. Anderson et al. v. California* (1972) 406 U.S. 971.) ■ The prosecutor's remarks were within the range of proper comment on the evidence and the credibility of witnesses. (*People v. Meneley, supra*, 29 Cal.App.3d 41 at p. 60.) If they did amount to misconduct, it was again waived because there was no objection. (*People v. Green, supra*, 27 Cal.3d at p. 27.) If it had been reserved by objection, it would not have commanded reversal because any harm could have been cured by an appropriate admonition. (*Id.*, at p. 34.)

█ In the context of arguing the question of reasonable doubt to the jury, the prosecutor said: "... [I]t's a difficult concept, but in the last few minutes I have what I think it really means, I've been in these courts maybe 13, 14 years." Appellant contends that this and the first two excerpts quoted above constituted "improper reflections of the prosecutor's own belief" and personal views which should not have been argued to the jury.

█ It is misconduct for a prosecutor to argue his personal opinion of a defendant's guilt or to intimate that he would not prosecute an innocent man. (*People* v. *Bain* (1971) 5 Cal.3d 839, 848-849 [97 Cal.Rptr. 684, 489 P.2d 564].) █ The prosecutor did not do this in the present case: examination of his arguments to the jury demonstrates that he was merely presenting his views of deductions and inferences warranted by the evidence. His use of the pronoun "I" did not mean that he was impermissibly injecting his personal beliefs. Again, there was no objection when the last-quoted comment was made. Any misconduct on that occasion was waived. (*People* v. *Green, supra,* 27 Cal.3d 1 at pp. 27, 34.)

Finally, examination of the entire record establishes that reversal is not commanded because it does not appear that the claimed misconduct would require reversal under any applicable test for prejudice. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 834-836 [299 P.2d 243]; see also *People* v. *Bolton* (1979) 23 Cal.3d 208, 214-215 [text and fn. 4] [152 Cal.Rptr. 141, 589 P.2d 396].)

The order granting probation is affirmed.

Poché, J., and Cook, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1982.

---

*Assigned by the Chairperson of the Judicial Council.