Filed 11/6/14  In re V.T. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.T., a Person Coming Under the Juvenile Court Law. | H040149 (Santa Clara County Super. Ct. No. JV40151) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>V.T.,<br><br>    Defendant and Appellant. | |

Following a contested jurisdiction hearing, the juvenile court found true an allegation that 17-year-old V.T. committed misdemeanor battery on his mother during an altercation.  (Pen. Code, §§ 242, 243, subd. (a).)[1]  The court declared him a ward of the court and placed him on probation on various terms and conditions.  On appeal, V.T. contends (1) there was insufficient evidence to sustain the finding that he committed battery because he acted in self-defense; (2) the juvenile court misapplied the law of self-defense; (3) the juvenile court erroneously required him to pay attorney fees; and (4) one of the conditions of his probation is vague and does not correctly reflect the court's oral pronouncement.

---

[1] Further unspecified statutory references are to the Penal Code.

We conclude the evidence was sufficient to support the juvenile court's finding that V.T. engaged in conduct that would constitute battery if committed by an adult, but we will modify the judgment to reflect that the minor is not liable for attorney fees. We will affirm the judgment as modified.

## I. FACTUAL BACKGROUND

On June 29, 2013, V.T. and his five-year-old sister were horse playing in their living room. The girl tripped and began crying. She falsely told her mother, who was in the kitchen, that V.T. had kicked her. Believing the girl, mother became angry. Mother's anger and frustration was due, in part, to V.T.'s behavior leading up to the incident, including using marijuana and being disrespectful. Mother went into the living room and punched V.T. in the arm. She testified that she hit him once; he said that it was three or four punches. According to mother, V.T. then put her in a "headlock" that was "getting tight" when she elbowed him and he removed his arm from around her neck. Mother alternatively referred to V.T.'s conduct as a "choke hold." V.T. testified that he attempted to grab his mother's arms to make her stop punching him and, because she was moving, his arm became wrapped around her neck.

After V.T. released his mother, he punched a hole in the wall as he walked out of the room. Mother called 911. She told the 911 operator that V.T. had not punched her but had pinned her down. The police arrived and took V.T. into custody.

## II. PROCEDURAL BACKGROUND

The Santa Clara County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) on July 2, 2013, alleging V.T. committed misdemeanor battery (§§ 242, 243, subd. (a)) and vandalism (§ 594).

At a contested jurisdiction hearing on August 8, 2013, V.T. admitted the vandalism allegation and denied the battery allegation. Following a hearing on the battery allegation, the juvenile court found the allegation true. In making that finding, the court stated that, in instances of family violence, "common[ly] . . . both people contribute

2

to the situation. [¶] But that does not make one person wholly responsible and the other person not responsible. It also does not have deciding impact necessarily on the outcome of your case." The court also expressed its view that "a choke hold [is] as important or more important and more threatening than any kind of slap or punch" and "often has very serious, and sometimes even fatal, consequences." At the conclusion of the hearing, the court ordered V.T. released on the electronic monitoring program to his father's home.

At the disposition hearing held on September 9, 2013, the juvenile court declared V.T. a ward of the court and placed him on probation, with 60 days on the electronic monitoring program. Among the probation conditions recommended for V.T. was one requiring him to complete 30 hours of public service work. V.T.'s counsel explained at the hearing that V.T. was required to complete 40 hours of community service in order to graduate from high school. The court responded that it did not intend for V.T. to be required to complete 70 hours of service, but rather wanted to "have his 30 hours of public service work satisfied if he completes his 40 hours at school." The written order states: "That said minor be ordered to complete 30 hours of public service work by 12/09/13 (thru school program is fine)." The court also ordered payment of attorney fees in the amount of $200, and stated to V.T. and his father "that's your responsibility and yours."

V.T. timely appealed.

## III.    DISCUSSION

### A.    *Sufficiency of the Evidence*

V.T.'s first contention on appeal is that the court's battery finding is not supported by sufficient evidence. In particular, he maintains the People failed to carry their burden to show he was not acting in self-defense.

#### 1.    *Standard of Review*

In assessing whether the juvenile court's battery finding is supported by sufficient evidence, we apply "the same principles applicable to adult criminal appeals." (*In re*

3

*Muhammed C*. (2002) 95 Cal.App.4th 1325, 1328.)  Under those principles, we ask whether the record contains any substantial evidence--meaning "evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the appellant guilty beyond a reasonable doubt"--tending to support the finding.  (*Ibid*.)  In considering that question, " 'we must view th[e] evidence in the light most favorable to the finding.' "  (*Ibid*.)  "The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment."  (*In re James B*. (2003) 109 Cal.App.4th 862, 872.)

### 2. *Applicable Substantive Law:  Battery, Self-Defense, and Parental Discipline*

"A battery is any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  "Any harmful or offensive touching constitutes an unlawful use of force or violence" for purposes of section 242.  (*People v. Martinez* (1970) 3 Cal.App.3d 886, 889.)

Self-defense is a "legal justification of battery."  (*People v. Mayes* (1968) 262 Cal.App.2d 195, 198.)  The prosecution bears the burden to prove beyond a reasonable doubt that the minor's use of force was not in lawful self-defense.  (*People v. Banks* (1976) 67 Cal.App.3d 379, 384; CALCRIM No. 960.)  A defendant acts in lawful self-defense where (1) he " 'reasonably believed that he was in imminent danger of . . . being touched unlawfully,' " (2) he " 'reasonably believed that the immediate use of force was necessary to defend against that danger,' " and (3) he " 'used no more force than was reasonably necessary to defend himself against that danger.' "  (*People v. Clark* (2011) 201 Cal.App.4th 235, 250 (*Clark*), quoting CALCRIM No. 3470.)

A parent has the right to discipline their child by administering "reasonable punishment," including "reasonable corporal punishment," "without being liable for a

battery." (*People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 (*Whitehurst*).) "[T]he use of physical force against a child is justified 'if a reasonable person would find that punishment was necessary under the circumstances and that the physical force used was reasonable.' " (*Clark*, *supra*, 201 Cal.App.4th at p. 250; CALCRIM No. 3405.) This court has held that a parent's use of physical force to discipline a child is justified where "(1) [the parent has] a genuine disciplinary motive; (2) [the circumstances furnish] a reasonable occasion for discipline; and (3) [the] disciplinary measure [is] reasonable in kind and degree." (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 91 (*Gonzalez*).)

Because the use of reasonable corporal discipline by a parent is permitted, "the child does not have the right to resist [such] discipline by use of force against the parent." (*Clark*, *supra*, 201 Cal.App.4th at p. 251, fn. 12.) Put differently, reasonable corporal discipline by a parent is not unlawful. Accordingly, a child who batters a parent in response to such discipline does not act in self-defense.

### 3. Analysis

The first question V.T.'s appeal raises is whether sufficient evidence supports the finding that he was not acting in self-defense. As the discussion above indicates, our answer turns on whether sufficient evidence supports the finding that his mother used reasonable corporal discipline in punching him. This is so because, if her conduct constituted reasonable corporal discipline, then it was *lawful* (*Whitehurst*, *supra*, 9 Cal.App.4th at p. 1050), and V.T. was not legally entitled to resist (*Clark*, *supra*, 201 Cal.App.4th at p. 250).

Substantial evidence supports the conclusion that mother's actions constituted reasonable parental discipline. As noted, a parent's conduct falls within the privilege to impose reasonable discipline on his or her child where there exists: (1) a genuine disciplinary motive; (2) a reasonable occasion for discipline; and (3) a disciplinary measure reasonable in kind and degree. (*Gonzalez*, *supra*, 223 Cal.App.4th at p. 91.)

5

With respect to the first requirement, mother's testimony constitutes substantial evidence that she punched V.T. to discipline him for kicking his sister, and thus acted out of a genuine disciplinary motive.

As to the second requirement, V.T. maintains that mother's punishment was not warranted by the circumstances, and thus was unjustified, because he had not in fact kicked his sister. (80 Ops.Cal.Atty.Gen. 203, 206 (1997) ["corporal punishment is unjustifiable when it is not warranted by the circumstances, i.e., not necessary"].) Parents often must decide whether and how to discipline their children without the benefit of knowing all of the facts. We decline to require parents to determine with absolute certainty whether and how their child misbehaved before imposing any punishment. Rather, the question here is whether the circumstances--as mother reasonably understood them at the time--furnished a reasonable occasion for imposing corporal punishment on V.T. Mother's testimony supports the conclusion that she reasonably believed, based on her daughter's statement, that 17-year-old V.T. had kicked the five-year-old girl. Whether those circumstances provided a reasonable occasion for discipline (or, in other words, whether corporal punishment was necessary under the circumstances) was a question for the court as factfinder. (*Whitehurst*, *supra*, 9 Cal.App.4th at p. 1050 [" '[B]oth the reasonableness of, and the necessity for, the punishment is to be determined by a jury, under the circumstances of each case.' "].) Based on the evidence, a rational factfinder could conclude that the circumstances necessitated physical punishment.

The parties vigorously dispute whether the punishment imposed--punching with a closed fist between one and four times--was reasonable in kind and degree, so as to satisfy the third requirement. "The reasonableness of the discipline is a question of fact to be determined objectively in light of the individual circumstances presented." (80 Ops.Cal.Atty.Gen., *supra*, at p. 206.) "It has been suggested that the reasonableness of a given instance of corporal punishment 'depends on four factors: the age of the child, the part of the body that was struck, the instrument used to strike the child, and the amount of

6

damage inflicted.' " (*Gonzalez, supra*, 223 Cal.App.4th at p. 93.) In view of those factors, substantial evidence supports the finding that the punishment here was reasonable in kind and degree. In particular, at 17 years old, V.T. was nearly an adult when his mother used a closed fist to punish him. (By contrast, it is difficult to imagine a situation in which striking a young child with a closed fist would be deemed reasonable.) He was struck in the arm, a relatively insensitive part of the body compared, for example, to the face or head. And there was no evidence that the punch or punches caused any injury. V.T. testified that the blows "hurt a little bit" and that he did not recall them leaving any marks. Evidence that V.T. was taller and stronger than his mother at the time of the incident reasonably supports the inference that she inflicted little or no damage.

Regardless of whether we agree with the wisdom of punching as a method to discipline a 17-year-old, the record contains sufficient evidence to allow a rational factfinder to conclude that mother's conduct constituted reasonable parental discipline. It follows that V.T. had no right to physically resist such punishment, such that his use of force on his mother constituted battery.

**B**.     ***The Juvenile Court Did Not Misapply the Law of Self-Defense***

V.T. also argues that two comments the court made in rendering its decision show it misunderstood and misapplied the law.

The juvenile court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties. (Evid. Code, § 664; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) Further, the judge is presumed to have properly instructed himself on the law applicable to the case. (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 342.) However, we may consider "the judge's 'statements as a whole' [to determine whether they] disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in 'secondary remarks' but in his basic ruling." (*People v. Ortiz* (1964) 61 Cal.2d 249, 253; *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440 [where a claim of error is based on comments made by a lower court, those

comments must "unambiguously disclose that its basic ruling embodied or was based on a misunderstanding of the relevant law."].)  Accordingly, we consider the two statements on which V.T. relies.

First, V.T. points to the court's statement that, in instances of family violence, "common[ly] . . . both people contribute to the situation. [¶] But that does not make one person wholly responsible and the other person not responsible.  It also does not have deciding impact necessarily on the outcome of your case."  V.T. maintains that the People were required to prove that he was "wholly responsible" because, if his mother bore any responsibility for the incident, then he acted in self-defense.  We disagree with V.T.'s characterization of the governing law.

Here, the prosecution offered two legal theories:  (1) V.T. did not act in self-defense because mother's conduct constituted reasonable parental discipline and (2) V.T. did not act in self-defense because, even if mother's conduct was unjustified, he used more force than was reasonably necessary to defend himself against her.  While it is unclear which theory the juvenile court accepted, its comments evince no misunderstanding of the governing law under either theory.  With respect to the reasonable parental discipline theory, both V.T. and mother "contribute[d] to" the physical altercation, such that neither was entirely "responsible," in the colloquial, nonlegal sense.  But, in light of mother's right to reasonably discipline V.T., her partial responsibility for the physical altercation did not have a "deciding impact" on the case by justifying V.T.'s retaliation.  Instead, because her use of physical force was legally justified, V.T.'s use of physical force was not legally justified; it constituted battery.  As to the theory that V.T.'s response was excessive, again, both V.T. and mother "contribute[d] to" the physical altercation, such that neither was entirely "responsible," in the colloquial sense.  But, because V.T.'s response was excessive, mother's own act of battery did not have a "deciding impact" on the case by justifying V.T.'s retaliation.

Instead, his excessive response constituted battery. In sum, regardless of how the court's statement is construed, it reflects an accurate understanding of the applicable law.

Second, V.T. takes issue with the court's assertion that "a choke hold [is] as important or more important and more threatening than any kind of slap or punch" and "often has very serious, and sometimes even fatal, consequences." According to V.T., that statement demonstrates the court based its decision on the incorrect legal theory that any touching of the neck is a choke hold and is per se excessive. We disagree with that sweeping understanding of the comment. In our view, the court's statement indicates that it credited mother's testimony that V.T. wrapped his arm around her neck and tightened his grip--something she characterized as a "choke hold." It is not our role to "reassess the credibility of witnesses." (*In re S.C.* (2006) 138 Cal.App.4th 396, 415.) The comment further indicates that the court concluded the choke hold was not a reasonably necessary response to mother's punch. Given that the law of self-defense requires consideration of whether the party claiming self-defense used " 'more force than was reasonably necessary to defend himself,' " we perceive no misapprehension of the law by the juvenile court. (*Clark*, *supra*, 201 Cal.App.4th at p. 250.)

For the foregoing reasons, after reviewing the juvenile court's statements in context, we are convinced that nothing said during the course of the jurisdiction hearing undermines the presumption that the court understood and applied the law correctly in this case.

### C. *Attorney Fees*

Welfare and Institutions Code section 903.1, subdivision (a) provides that "[t]he father, mother, spouse, or other person liable for the support of a minor . . . shall be liable for the cost to the county . . . of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court." The parties agree that neither Welfare and Institutions Code section 903.1, nor any other statute, authorizes a juvenile court to impose personal liability on a minor for the attorney fees incurred in representing him or

9

her in the juvenile proceeding.  We concur.

Here, at the disposition hearing, the court ordered attorney fees in the amount of $200 and then stated "[t]hat's your responsibility and yours."  According to the transcript of that hearing, the latter comment was "[d]irected to the minor and his father."  By contrast, the court's written order of probation--which is expressly incorporated into its written disposition order--states that "parents are ordered to appear . . . for an evaluation of the ability to pay" $200 in public defender fees.  V.T. argues, and the People concede, that the court's order should be amended to reflect that only the parents are liable for attorney fees.[2]  In order to eliminate any possible confusion, we will order the judgment modified to clarify that the minor is not liable for attorney fees ordered in this case.

### D.    *Public Service Probation Condition*

Finally, V.T. urges that the probation condition requiring him to complete 30 hours of public service is vague.  That probation condition reads:  "That said minor be ordered to complete 30 hours of public service work by 12/09/13 (thru school program is fine)."  As discussed above, during the disposition hearing, the court indicated that V.T.'s probation-related service requirement could be fulfilled by the 40 hours of community service his school separately required him to complete.  According to V.T., the court's written order could be read as requiring V.T. to complete a total of 70 hours of public service, all of them through his school's program.  To remedy that asserted vagueness, V.T. requests that the order be modified to read:  "30 hours of court-ordered community

---

[2] V.T. did not raise this challenge below.  However, because imposition of personal liability for attorney fees is unauthorized under the law, the challenge is cognizable on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 354 [appellate court may take action on its own motion to correct (an unauthorized sentence), even where the parties have failed to raise the issue]; see also *People v. Anderson* (2010) 50 Cal.4th 19, 26 [challenge to probation condition based upon assertion that restitution was not authorized by law was cognizable, even though not raised before trial court].)

service shall be satisfied if minor completes the 40 hours of community service required by his school."

Probation conditions must be given the "meaning that would appear to a reasonable, objective reader." (*People v. Bravo* (1987) 43 Cal.3d 600, 606.) Read reasonably, the public service probation condition requires V.T. to complete 30 hours of public service, whether though his school's community service program or otherwise. No reasonable person would construe the condition to mean that V.T. must complete 30 hours of public service in addition to any public service separately required by his school. Accordingly, we decline to modify the condition.

## IV.   DISPOSITION

The judgment is modified as follows: The minor is not liable for the amount of $200 in attorney fees assessed by the juvenile court. As modified, the judgment is affirmed.

11

_____
                Premo, J.

WE CONCUR:



_____
        Rushing, P.J.



_____
        Elia, J.