Filed 8/15/16  P. v. Ramirez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B266525 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA138604) |
| v. | |
| OSCAR E. RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvonne T. Sanchez, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Oscar Eduardo Ramirez was convicted by jury of inflicting corporal injury on a former cohabitant, in violation of Penal Code section 273.5, subdivision (a). The jury was unable to reach verdicts on the additional charges of assault with a stun gun and false imprisonment. Defendant contends that: (1) the trial court erred in failing to sua sponte instruct the jury on self-defense; (2) the trial court's failure to instruct on self-defense relieved the prosecution of the burden of disproving self-defense, in violation of defendant's federal constitutional rights; (3) the trial court erroneously excluded the testimony of a witness regarding the victim's character for violence; (4) the prosecutor improperly vouched for the victim's credibility in rebuttal arguments; and (5) cumulative errors violated defendant's federal rights to due process. We affirm.

**FACTS**

The charges in this case stem from a physical altercation on March 9, 2015, between defendant and his then-girlfriend, Abigail Perea. Defendant and Perea had been dating for about two years at the time of the altercation. The two lived together for less than one month in June 2014, but Perea moved out before the altercation.[1] On March 9, at about 2 p.m., defendant picked up Perea from her work at a bar in South Gate. Defendant was mad at Perea for texting him that defendant's ex-girlfriend had been bothering her. Defendant drove Perea to the home he shared with his mother, arriving at about 3:20 p.m. Perea sat down on the couch in the living room, near a glass dining table. Defendant warned Perea that he was going to tase her. Perea remained seated on the couch while defendant went to get his taser. Defendant tased her on her left and right arm and then dragged her across the living room floor.[2] Defendant punched Perea in the

---

[1] Perea previously testified to living with defendant for about a year, although it had only been less than a month.

[2] Perea previously testified that she was tased in the right shoulder and right hip.

2

lower right lip, left eye, and dragged her by her hair to the bedroom and restroom. He pulled her hair side to side, and slapped and punched her. Defendant dragged Perea to the restroom, threw her into the shower, turned on the water, and alternated the temperature of the water between hot and cold. Defendant dragged Perea by the hair back to the bedroom, punched and slapped her, and hit her on the back with a metal tool. Defendant said "that he felt like a man."

Perea gave the following testimony on the issue of whether she hit defendant. She hit him while they were arguing in his house. She did not recall if she struck him while they were in the car. She thinks she struck him first. She could not recall how she hit defendant by explaining, "I just know he was hitting me and I was trying to fight back." She could not recall if she hit him first or he hit her first. She did not hit him before or after he used the taser on her. She hit him while they were in the bedroom, after he hit her. She does not recall if she hit him first, but if she did, it was the result of her anger at "what he was doing towards me," including dragging her "like a rag doll in his bedroom and while she was "well, obviously wet."

Perea managed to escape by asking to use the bathroom, fleeing out the bathroom window, and running to her former boss's home one street away. Her former boss took her to his work at a bar on Tweedy Boulevard and called the police. Perea sustained injuries from defendant's attack, including redness to the lips, redness to her back, and redness above the left eye. Perea's piercings to her lip and belly button fell out during the incident.

Perea testified in the presence of defendant, his friend, and his mother. She described how "all you guys watching me kind of creeps me out" and the whole situation made her nervous.

Officer Eder Vergara met Perea at the bar on Tweedy Boulevard at about 6:00 p.m. or 7:00 p.m. on March 9, 2015. Perea had redness and bruising on both sides of her face. She had contusions to the left eye, swollen lips, and redness to both sides of the face. The area near her lip ring was swollen; the balls that held the lip ring in place were missing. Perea also had a red line on her lower back and redness on her

3

"bellybutton area."  Officer Vergara took photographs of Perea's injuries.

## DISCUSSION

**Trial Court's Duty to Instruct on Self-Defense**

Defendant contends that the trial court erred in failing to sua sponte instruct the jury on self-defense.  According to defendant, Perea's testimony that she hit defendant provided substantial evidence of self-defense, triggering the trial court's duty to instruct the jury on this issue.  We disagree.

We review a claim of error in jury instructions de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  A trial court has a sua sponte duty to instruct on an affirmative defense "'if it appears the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'  [Citation.]"  (*People v. Boyer* (2006) 38 Cal.4th 412, 469; see also *People v. Martinez* (2010) 47 Cal.4th 911, 908.)  "Substantial evidence is evidence of reasonable, credible value."  (*People v. Crew* (2003) 31 Cal.4th 822, 835.)  "'To justify an act of self-defense . . . the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him.  [Citation.]'  (*People v. Goins* (1991) 228 Cal.App.3d 511, 516, italics in original.)  The threat of bodily injury must be imminent (*In re Christian S.* (1994) 7 Cal.4th 768, 783), and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]'  [Citations.]"  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065 (*Minifie*).)

Defendant's argument fails on two fronts.  First, Perea's testimony does not constitute substantial evidence giving rise to a claim of self-defense.  At best, Perea provided vague and inconsistent testimony as to when and how she hit defendant.  She variously testified to hitting defendant during the argument, thinking she struck him first, not hitting him before or after he used the taser, and hitting him when they were in the

4

bedroom because of defendant's attack upon her. She only knew he was hitting her and she was "trying to fight back." What the record does not show is how hard, if at all, Perea connected with defendant. The record contains no evidence that a reasonable person in defendant's position would have had an honest and reasonable belief that bodily injury was about to be inflicted on him. In sum, Perea's testimony provided no basis for the jury to find that defendant was in "imminent" danger of bodily injury by Perea. (*Minifie*, *supra*, 13 Cal.4th at pp. 1064-1065.)

Second, assuming Perea's conduct was sufficient to give rise to a right to self-defense, that right was limited by the circumstances. Defendant's response was excessive as a matter of law—it was not "limited to the use of such force as is reasonable under the circumstances." (*Minifie*, *supra*, 13 Cal.4th at p. 1065.) At best, defendant was hit once or twice. His reaction to these one or two undefined hits was to: (1) strike Perea about the face and back; (2) drag her by the hair while she was on her stomach; and (3) hit her on the back with a metal tool. Perea's testimony that she sustained injuries to the face, stomach, and back from the attack was corroborated by Officer Vergara, who observed bruising to Perea's left eye, redness to both cheeks, swelling to the lips, redness to the stomach, and a red line to the back. The officer documented her injuries in photographs.

Defendant argues that the jury's failure to reach a verdict on the charges of assault with a stun gun and false imprisonment charges shows that: (1) Perea's testimony was not credible; (2) the jury did not believe Perea's account of the altercation; (3) the jury could have believed that Perea hit defendant first; and (4) the jury may have reached a different result with an instruction on self-defense. The argument is complete speculation as to the jury's reasoning process. It also fails to acknowledge that self-defense only is applicable where a defendant's actions are reasonable in light of the threat presented by the victim. Even without considering Perea's testimony that defendant threatened her with a taser, tased her, and dragged her throughout the apartment by the hair, there was undisputed evidence that defendant utilized excessive force that caused Perea to flee from defendant's residence to the nearby home of her former boss, and her abundant injuries were observed and documented by law enforcement. No evidence was presented that

5

defendant suffered any injury.

Defendant had the opportunity to develop a self-defense claim during his cross-examination of Perea, but failed to do so. Defendant had the opportunity to elicit additional information from her regarding her participation in the altercation, the strength of her blows, and other information directly relevant to a self-defense claim. Defendant did not do so, and the record on appeal is insufficient, as a matter of law, to support a sua sponte duty to instruct on self-defense.

**The prosecution's duty to disprove self-defense**

Defendant contends the trial court's failure to instruct on self-defense violated his due process right requiring the prosecution to prove every element of an offense beyond a reasonable doubt. Defendant cites to *People v. Adrian* (1982) 135 Cal.App.3d 335 (*Adrian*) and *People v. Banks* (1976) 67 Cal.App.3d 379 (*Banks*), for the proposition that disproving self-defense is an element of homicide and non-homicide prosecutions involving violence. This argument is without merit.

The authority cited in *Banks*, and the *Banks* decision, make clear that the prosecution must prove, beyond a reasonable doubt, the absence of self-defense *when the issue is properly presented*. (*Banks*, *supra*, 67 Cal.App.3d at p. 384, citing *Mullaney v. Wilbur* (1975) 421 U.S. 684, 704.) The holding in *Adrian* is in accord with *Banks*—when self-defense is properly raised as an issue, the burden is on the prosecution to prove the charged assaultive conduct was not committed in self-defense. (*Adrian*, *supra*, 135 Cal.App.3d at p. 339 [upon proper request the court must instruct on self defense].) As discussed above, the issue of self-defense was not properly presented based on the evidentiary record at trial, and the prosecution therefore had no burden to disprove the defense. Defendant's due process rights were not violated.

Assuming there was error, defendant did not suffer prejudice under either federal or state law. (*Chapman v. California* (1967) 386 U.S. 18, 23-24; *People v. Watson* (1956) 46 Cal.2d. 818, 836 (*Watson*).) The overwhelming evidence established, beyond

6

a reasonable doubt, that defendant's assault on Perea was unreasonable under the circumstances. Even if Perea hit defendant first, there is no evidence Perea's conduct would have placed defendant in reasonable fear of imminent bodily injury. Defendant responded with disproportionate force, including hitting Perea's back with a metal tool and punching her with sufficient force that her lip ring fell out. Any error in failing to instruct on self-defense was harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, at pp. 23-24.)

**The exclusion of evidence regarding Perea's character for violence**

Defendant next contends the trial court erred in excluding, on relevance grounds, evidence of Perea's character for violence. Defendant contends the trial court based its ruling on Perea's testimony that she hit the defendant only after she was tased, but the jury did not convict defendant for assault with a stun gun. Defendant reasons that the trial court's factual basis for exclusion was erroneous, and the proffered evidence should have been admissible. Defendant further argues that the error was prejudicial, as the victim's propensity for violence would have lead to a more favorable result because it would have further undermined the victim's credibility and support the reasonableness of defendant's use of force. We disagree.

"We review for abuse of discretion a trial court's rulings on relevance and the exclusion of evidence under Evidence Code[,] section 352. [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 578.) "Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In appropriate circumstances, a defendant may offer the victim's character for violence when self-defense is supported by the evidence. (See Evid. Code, §§ 1101,

7

subd. (a)[3], 1103, subd. (a)(1)[4].)  "The admission of such character evidence, however, is not without bounds . . . ."  (*People v. Wright* (1985) 39 Cal.3d 576, 587.)  "The trial court must always perform its gate keeping function pursuant to Evidence Code section 350 to exclude evidence that is irrelevant."  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 828 (*Gutierrez*).)  "Where no evidence is presented that the victim posed a threat to the defendant, exclusion of evidence regarding the victim's propensity for violence is proper."  (*Id.* at p. 828, citing *People v. Hoyos* (2007) 41 Cal.4th 872, 912-913, abrogated on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610.)

After the prosecution rested, defendant proffered the testimony of Angel Ordonez and Ricardo Ochoa.  Ordonez would testify to "hanging out" with defendant for a week or so before his arrest, but when asked to explain the relevance of this witness, defendant provided no explanation.  The trial court allowed defendant to call Ordonez, but indicated objections to his testimony on relevance grounds would be sustained.  Defendant does not pursue the issue of admission of Ordonez's testimony on appeal.  Defendant made an offer of proof that Ochoa would testify to seeing Perea become aggressive with defendant when intoxicated and seeing Perea hit defendant.  Defendant argued that Ochoa's testimony tended to prove Perea's character for violence, and Perea's testimony regarding hitting defendant provided evidence of self-defense.  The trial court disagreed, stating there was no evidence to support self-defense and the proffered evidence was irrelevant.  The court reasoned that Perea's testimony was not definitive about when she hit the

---

[3] Evidence Code section § 1101 provides in relevant part as follow:  "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

[4] Evidence Code section 1103 provides in pertinent part as follows:  "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is:  [¶]  (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

defendant, and "the only thing definitive was it was sometime after the taser and other than that, she went back and forth . . . ." The trial court would allow defendant to call Ochoa, but would likely sustain objections to his testimony on relevance grounds. Defendant did not call Ochoa as a witness.

The court's ruling was a reasonable interpretation of the evidence and a fair application of Evidence Code section 1101, subdivision (a), which prohibits admission of character evidence when, as here, "offered to prove his or her conduct on a specified occasion." Evidence Code section 1103, subdivision (a)(1), which defendant relies upon, provides a narrow exception to the rule precluding character evidence of a witness by permitting a defendant to offer a victim's character for violence in self-defense cases. Character evidence remains inadmissible under Evidence Code section 1101, subdivision (a), in the absence of sufficient evidence of self-defense. (*Gutierrez*, *supra*, 45 Cal.4th at pp. 827-828.) As discussed above, there was insufficient evidence of self-defense.

To the extent the trial court ruled that the proffered evidence was irrelevant, because self-defense was not in issue, its decision was well within the court's broad discretion. (*People v. Merriman* (2014) 60 Cal.4th 1, 74; *People v. Williams* (2008) 43 Cal.4th 584, 634.) And contrary to defendant's argument, the jury's inability to reach verdicts on the charges of assault with a taser and false imprisonment does not establish that otherwise inadmissible character evidence was relevant. The trial court was aware that the jury may not have believed that the victim was tased and considered this in making its ruling. The proffered testimony did not tend to prove or disprove any details of the physical altercation between Perea and defendant.

Assuming the trial court erred in excluding the evidence, "any such error was harmless because it would not have resulted in a more favorable verdict. (*People v. Watson*[, *supra*,] 46 Cal.2d [at p.] 837; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1213.)" (*Gutierrez*, *supra*, 45 Cal.4th at p. 828.) Defendant's primary argument at trial was that the assault did not occur, or at least not as described by Perea, because had it occurred as Perea testified she would have sustained more injuries. However, there was

9

overwhelming and uncontradicted evidence defendant inflicted corporal injury on Perea. Officer Vergara's testimony regarding Perea's injuries, along with the photos documenting these injuries, substantiated Perea's version of events. It is not reasonably probable the jury would have reached a conclusion more favorable to defendant had it heard Ochoa's proffered testimony.

**Alleged Prosecutorial Misconduct**

Defendant contends that the prosecutor improperly vouched for Perea's credibility by describing her as a typical domestic violence victim, a fact not established at trial as the prosecution did not admit expert testimony regarding the behavior of domestic violence victims. Defendant further contends that the prosecutor's comments constitute misconduct. The Attorney General argues that the defendant forfeited the claims by failing to object on vouching grounds or to request that the jury be given a curative instruction, and that the contention lacks merit. The Attorney General is correct.

"A 'prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," her comments cannot be characterized as improper vouching.' [Citations.] Misconduct arises only if, in arguing the veracity of a witness, the prosecutor implies she has evidence about which the jury is unaware. [Citations.]" (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 561.)

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence. [Citation.] Generally, a claim of prosecutorial

10

misconduct is preserved for appeal only if the defendant objects in the trial court and requests an admonition, or if an admonition would not have cured the prejudice caused by the prosecutor's misconduct. [Citations.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) "Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

Defense counsel argued to the jury, "[Perea] said that [defendant] warned her that he was going to tase her. Now, I've never been tased. I don't know if any of you have ever been tased, but if someone is going to warn me that they are going to tase me and you see them going in the direction of where you know they keep a taser, come back and you see the taser in hand and you are still sitting on the couch? When you are close to the door? [¶] . . . But that's, Ladies and Gentleman, is not reasonable. It is not credible. . . . It is not believable that that would have happened." Defense counsel argued that Perea was not a credible witness, stating, "You have all had an opportunity to see her, listen to her responses, how she responded to the questions, how long it took her to answer questions. Even the most simple of questions took like an eternity. You get to use all of that information in evaluating whether or not you trust her testimony, whether or not you believe she is credible, whether or not you believe she is reliable."

The prosecutor argued in rebuttal, "And when you look at the evidence in this case, you've got [Perea], who is really what you saw here is the testimony of a perfectly vulnerable domestic violence victim. That's exactly what you would expect of someone who has been beaten down." Defense counsel objected to this "characterization"; the trial court overruled the objection. The prosecutor went on to argue, "And she is someone who will just sit there and take it from him, get tased by him, knows it is coming and just takes it. . . . So when someone who has gotten a beating like that comes in and testifies in front of a perfect strangers, gets cross-examined, has me asking her questions in front of the man who beat her . . . that makes sense why that is exactly what you would see from a woman who has just been beaten as she has." Defense counsel did

11

not object.

First, defendant has forfeited his claim. Defendant objected to the prosecutor's argument, but the only ground stated was an objection "to that characterization." This is not a legal objection, and it most certainly did not put the trial court on notice that defendant was raising an objection on the grounds that the prosecutor's comments were improper vouching and misconduct. No request for a jury admonition was made. A "defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requests that the jury be admonished to disregard the impropriety." (*People v. Stanley* (2006) 39 Cal.4th 913, 952.) Defendant has forfeited this claim. (See *People v. Alfaro* (2007) 41 Cal.4th 1277, 1328; *People v. Cook* (2006) 39 Cal.4th 566, 606.)

Second, the prosecutor's comments were a fair rebuttal to defendant's closing arguments. Defense counsel's argument called into question Perea's credibility at trial, asking the jury to find her testimony unreasonable based on her behavior and demeanor. The prosecutor responded that Perea's demeanor at trial was to be expected from a victim of domestic violence who was forced to testify in front of her attacker and strangers. The prosecutor's comment, based on the evidence, briefly explained that it is perfectly reasonable that Perea would be uncomfortable answering questions in front of her assailant. This was a "fair rebuttal to defense counsel's characterization of the prosecution evidence . . . ." (*People v. Edwards* (2013) 57 Cal.4th 658, 740.)

Third, the prosecutor's comments do not constitute personal vouching for Perea's credibility. Defendant contends that describing Perea as a typical domestic violence victim implied that the prosecutor had special knowledge about how victims typically testify, bolstering Perea's credibility. The prosecutor did nothing to suggest that he had any special knowledge regarding Perea's credibility when he described her as a perfectly vulnerable domestic violence victim. The reality is that this was a domestic violence prosecution, there was abundant evidence of domestic violence, and a fact-based argument that Perea was a domestic violence victim was not misconduct. The prosecutor's statements rebutted defense counsel's attack on Perea's credibility and were

12

a fair commentary of the facts established at trial.

Fourth, defendant cannot establish prejudice. "'A defendant's conviction will not be reversed for prosecutorial misconduct' that violates state law, however, 'unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.' [Citation.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1071.) The trial court instructed the jurors on their obligation to determine whether witnesses in the case were credible, and there is every reason to believe the jury performed its function in this case without undue influence from the prosecutor's argument, as the jury did not reach verdicts on two of the three counts. As a result, there is no "reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.)

**No Cumulative Error**

Defendant contends if no single error warrants reversal, the cumulative effect of the errors requires reversal. (*Parle v. Runnels* (9th Cir. 2007) 505 F.3d 922, 928, citing *Chambers v. Mississippi* (1973) 410 U.S. 284, 298, 302-303.) We disagree. As discussed above, the trial court did not err. In any event, none of the trial court's rulings would have affected the verdicts and were therefore harmless. (*People v. Seaton* (2001) 26 Cal.4th 598, 691-692.)

**DISPOSITION**

The judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P.J.


BAKER, J.