Filed 11/2/22  P. v. Cutler CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE, | B322546 |
| Plaintiff and Respondent, | (Stanislaus County  Super. Ct. No. 1485161) |
| v. | |
| DAVID EVAN CUTLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Stanislaus County, Scott Steffen, Judge.  Affirmed in part, vacated in part and remanded with directions.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant David Evan Cutler challenges his conviction of voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] for fatally stabbing Trevor Bolton. He contends that there was no substantial evidence to support his conviction because the only reasonable conclusion was that he acted in self-defense. We disagree. Cutler also contends that he is entitled to a new sentencing hearing in light of two newly enacted ameliorative laws, Assembly Bill No. 124 (2021-2022 Reg. Sess.) and Assembly Bill No. 518 (2021-2022 Reg. Sess.). We agree, and we will remand the case to the trial court to reconsider his sentence.

## FACTS AND PROCEEDINGS BELOW

On the afternoon of Sunday, March 8, 2015, Bolton and his neighbor, Jordan Panella, were riding their skateboards on a residential street in Modesto, along with the six-year-old son of Bolton's girlfriend, who was riding his bicycle. The three were traveling to the parking lot of a nearby medical center, where they planned to continue riding their skateboards. A tan, diesel-powered 1983 Mercedes drove up behind them, with Cutler driving, and his girlfriend, Candice Jenkins, in the passenger seat.

According to Panella, Cutler's car was driving at high speed, and as it passed the skateboarders, it came uncomfortably close to Bolton. Bolton yelled at the car to slow down and raised his arms. The car stopped about 20 yards ahead. Bolton rode his skateboard up to the car, and he and Cutler yelled at one

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

2

another. The argument did not escalate into a physical fight, and eventually Cutler drove away.

Jenkins also testified about this initial confrontation. She stated that the car was not speeding, and Bolton was riding his skateboard back and forth across both lanes, making it difficult for the car to pass him. Cutler yelled "Get out of the road" at Bolton as he drove past, and Bolton grew angry, raising the skateboard up over his head as if he were going to attack them with it. Cutler pulled to the side of the road, and Bolton rushed toward the car, shouting, "You need to get out of the car," and "Come on, pussy, what are you gonna do? What are you gonna do?" Cutler tried to defuse the situation by telling Bolton, "Hey I skate too. Go back on the side of the road." Ultimately, Cutler said "Fuck you," and drove away, at Jenkins's urging.

After the initial confrontation, Bolton and the others proceeded to the medical center, which was just a few minutes away. Cutler drove back to the home where he and Jenkins lived and dropped Jenkins off. He seemed frustrated and upset, and he left the car running while he went into the house. He told Jenkins he was going to deal with the situation with Bolton, and he grabbed his own skateboard, which he planned to show to Bolton to demonstrate that he was a skateboarder too. He then drove away.

About 20 minutes after he first encountered Bolton, Cutler drove into the parking lot of the medical center, close to the area where Bolton and his friends were skateboarding. The medical center's surveillance camera captured the confrontation, and the video was played for the jury. Bolton approached the car, yelling at Cutler. Cutler got out of the car and stood next to the driver's seat, and argued with Bolton, who got up in Cutler's face. The

3

surveillance video does not clearly show who struck first, but Panella acknowledged that he saw Bolton headbutt Cutler, and a bystander testified that Bolton started the fight. In the ensuing melee, Bolton appeared to get the better of Cutler, throwing him against the car door and grabbing him by the hair. But Cutler was armed with a knife, which he swung at Bolton. Bolton suffered two stab wounds in the abdomen, as well as shallow, defensive wounds on his upper arm and the tip of his finger. The fight ended approximately 10 seconds after it started, when Bolton threw Cutler to the ground. Bolton then reached into the car, grabbed the keys, and flung them.

After the fight was over, Bolton told Panella that he had been stabbed, and Panella could see puncture wounds in Bolton's abdomen. According to one witness, after the fight Cutler asked what had happened, as if he didn't know. Bolton walked into the medical center, with Panella accompanying him and Cutler following behind. Bolton received treatment at the medical center and was later transported to a hospital where he died from blood loss.

Cutler remained on the scene and was interviewed by police. He told an officer that he might have stabbed Bolton with his keys. A police sergeant watched a surveillance video that appeared to show Cutler place an object in the shrubs by a fountain in front of the medical center. The sergeant found a folding knife with four finger holes similar to those on brass knuckles. There was blood on the knife. Cutler's girlfriend Jenkins recognized the knife as one that she and Cutler kept under the mattress of their bed for protection. She had not seen the knife for several months.

Cutler testified in his own defense. He claimed the latch of the trunk on the car was broken, and that he had kept the knife in the driver's side door compartment for the past several months to make it easier to open the trunk. Cutler claimed that he also used the knife sometimes to open the glove compartment and to operate the stereo in the more than 30-year-old car.

He described the initial confrontation similarly to Jenkins: he was driving at a reasonable speed, when he saw Bolton riding his skateboard in the middle of the street. He slowed down and managed to go around Bolton, who told him to slow down. Bolton continued yelling at him and challenged him to get out of the car and fight. Cutler stopped the car short of a red light, and Bolton skated toward him fast, striking the car and holding the skateboard in his hand as if he were going to swing it at the car. Cutler then drove away.

When he returned home, he grabbed his skateboard, put it in his car, and drove back toward where he had encountered Bolton. He did not expect to fight Bolton, but wanted to tell him that he was a skateboarder too, to "squash whatever he was mad about" so there would not be an issue between the two if he ever ran into Bolton again. According to Cutler, Bolton approached him at the medical center parking lot, said, "I'm going to take your car," and headbutted him. Cutler had never been in a fight before and was terrified. Cutler claimed he did not have the knife in his hand at this point, but when Bolton threw him into the door of the car, he managed to reach into the door compartment and grab it. Cutler denied that he intended to unfold the knife, and testified that it must have opened on its own. Cutler then stabbed Bolton while trying to fend him off.

Cutler admitted that he hid the knife afterward and lied to police about using it because he was afraid.

In rebuttal, a police detective testified that the lock of Cutler's trunk was missing, and that he was able to open it using his index finger, without needing a knife. The prosecution also introduced evidence that Bolton appeared to have suffered a knife wound on the back of his upper arm. In the surveillance video of the fight, Cutler appears to strike at Bolton's arm only at the beginning, before he would have had an opportunity to reach back into the car.

The prosecution charged Cutler with one count of murder (§ 187, subd. (a)) and one count of possession of metal knuckles (§ 21810), and alleged that he personally used a dangerous or deadly weapon in the commission of the murder (§ 12022, subd. (b)(1)). At the conclusion of the prosecution's case in chief, the trial court granted Cutler's motion for acquittal on the murder charge, and amended the charge to the lesser included offense of voluntary manslaughter (§ 192, subd. (a)).

The jury convicted Cutler of manslaughter and possession of brass knuckles, and found true the allegation that he personally used a knife in the killing. The court sentenced Cutler to an aggregate sentence of seven years, consisting of the middle term of six years for manslaughter, plus a one-year enhancement, to be served consecutively, for using a weapon. The court stayed the sentence on the weapon possession charge under section 654.

Cutler filed a timely notice of appeal.

## DISCUSSION

### A.  *Substantial Evidence Supported Cutler's Manslaughter Conviction*

Cutler contends that we must reverse his manslaughter conviction because the prosecution failed to present substantial evidence that he did not act in self-defense in killing Bolton. "[A] homicide is justifiable and noncriminal where the actor possessed both an actual and reasonable belief in the need to" kill to defend himself from imminent danger to life or great bodily injury. (*People v. Stitely* (2005) 35 Cal.4th 514, 551.) The prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. (*People v. Banks* (1976) 67 Cal.App.3d 379, 384.)

Substantial evidence is "evidence which is reasonable, credible, and of solid value from which a rational trier of fact could find [the] defendant guilty beyond a reasonable doubt." (*People v. Cage* (2015) 62 Cal.4th 256, 275.) When we review for substantial evidence, "[w]e do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.) We may reverse only if "no rational trier of fact reasonably could have found defendant[ ] guilty" on the basis of the evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166.)

Cutler argues that the only rational conclusion from the evidence presented at trial was that he acted in self-defense. He notes that the surveillance video showed that Bolton approached him the moment he got out of the car, and that Bolton started the fight by headbutting him almost immediately afterward. Bolton

7

was physically larger than Cutler, and his friend Panella was standing nearby, ready to join the attack. According to Cutler, the only reason he took the knife out of the car and stabbed Bolton was because he reasonably feared imminent great bodily injury.

But this account leaves out other evidence. Cutler had engaged in a confrontation with Bolton shortly before the stabbing. Although he claimed that he was merely frustrated, he admitted that the incident made him "mad," and Jenkins, his girlfriend at the time, agreed that the incident made him upset. Cutler testified that he kept the knife in his car and used it to help open the trunk and glove compartment, and to operate the stereo. But Jenkins said she and Cutler kept the knife under their mattress, and she had not seen it in several months, though she had ridden in the car that same day. A reasonable jury could have concluded that Cutler took the knife from home with him when he went to confront Bolton.

Cutler testified that he grabbed the knife from inside the car only after Bolton headbutted him and pushed him into the car door, but other evidence suggested that he had the knife in his hand from the beginning of the confrontation. Bolton suffered a knife wound on his upper arm, and the surveillance video footage indicated that Cutler struck Bolton on his upper arm only near the beginning of the fight, before Bolton pushed him toward the car door. If Cutler's account were correct, he would have had less than two seconds to reach into the door compartment, pull out the knife, and unfold it, all while Bolton was continuing to attack him.

" 'The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent

8

necessity of exercising self-defense.' " (*People v. Enraca* (2012) 53 Cal.4th 735, 761, quoting CALJIC No. 555.) A rational jury could have concluded that this is what Cutler did. Angry at Bolton after the initial confrontation, he returned to the scene armed with a large knife and sought to continue the fight there. Because we cannot rule out this possibility, we must affirm Cutler's manslaughter conviction.

**B.**     ***The Case Must Be Remanded to Allow the Court to Consider Resentencing Cutler in Light of Two New Laws***

Cutler contends that we must remand his case to allow the trial court to consider resentencing him in light of two newly enacted statutes. The People concede this is correct, and we agree.

In 2021, after Cutler was convicted, the Legislature enacted two new laws affecting criminal sentencing in ways relevant to this case. Assembly Bill No. 124 (Stats. 2021, ch. 695) amended section 1170 to create a presumption in favor of imposing the lower term in all cases where the defendant's youth was a contributing factor in the commission of the offense.[2] The

---

[2] "During the 2021-2022 legislative term, the Legislature introduced three bills proposing changes to section 1170 in a variety of ways. (Assem. Bill [No.] 124 (Stats. 2021, ch. 695, § 5), Assem[.] Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2), and Sen[.] Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3).) The three bills were approved by the Governor and filed with the Secretary of State on October 8, 2021. Senate Bill No. 567 . . . bears the highest chapter number and is presumed to be the last of the three approved by the Governor. (Gov. Code, § 9510.) To the extent there are conflicts

statute applies in cases where the defendant was under 26 years of age at the time of the commission of the offense.  (§§ 1016.7, subd. (b), 1170, subd. (b)(6)(B).)  Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) amended section 654 to provide that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions."  (§ 654, subd. (a).)  Previously, section 654 forbade double punishment for a single act or omission, but required the trial court to impose sentence "under the provision that provides for the longest potential term of imprisonment." (Former § 654.)

Because both of these laws are ameliorative, in that they provide a possibility for defendants to receive a reduced sentence, and because the Legislature did not provide otherwise, the laws apply retroactively to defendants whose convictions were not yet final at the time the laws became effective.  (*People v. Banner* (2022) 77 Cal.App.5th 226, 240 [Assem. Bill No. 124]; *People v. Sek* (2022) 74 Cal.App.5th 657, 673 [Assem. Bill No. 518].)

Both of the new laws apply to Cutler, whose case was not yet final when the laws became effective on January 1, 2022.  He was 23 years old when he stabbed Bolton, so he is a youth as defined in section 1170, subdivision (b)(6)(B).  The trial court applied section 654 and stayed his sentence for possession of

---

between the three bills, Senate Bill No. 567 . . . takes precedence. (*In re Thierry S.* (1977) 19 Cal.3d 727, 738-739 . . . .)  Because the bills are not in conflict and the changes at issue in this appeal were introduced by Assembly Bill [No.] 124, for ease of discussion, we refer to Assembly Bill [No.] 124 rather than Senate Bill No. 567. . . ."  (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1074, fn. 2.)

brass knuckles because the court found that Cutler's possession of the knife with brass knuckles was inseparable from his use of the weapon in killing Bolton. Under the new version of section 654 as amended by Assembly Bill No. 518, the trial court would have had discretion to stay the sentence for manslaughter and impose sentence for possession of brass knuckles instead.

We may refuse to remand a case for resentencing if the record shows that to do so would be futile. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) But nothing in the trial court's comments at sentencing indicates that the court would have refused to impose a lower sentence if the new laws had been in effect at that time. Thus, we will remand the case for the trial court to hold a new sentencing hearing under these new laws.[3]

## DISPOSITION

The judgment of conviction is affirmed, but Cutler's sentence is vacated, and the case is remanded to the trial court for a new sentencing hearing.

NOT TO BE PUBLISHED

---

[3] Cutler notes another recent enactment that may affect the resentencing hearing. Senate Bill No. 81 (Reg. Sess. 2021-2022) amended section 1385 to provide that when sentencing a defendant, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (Stats. 2021, ch. 721, § 1, enacting § 1385, subd. (c)(1).) This law applies to all sentencings after January 1, 2022. (*People v. Sek, supra,* 74 Cal.App.5th at p. 674.)

11

BENKE, J.*

We concur:

CHANEY, J.                    BENDIX, Acting P. J.

---

*Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.